Mr. Boyd. Good morning, Your Honor. Andy Boyd from the State Appellate Defendant's Office. Your Honor, what this appeal comes down to is the issue of filing a complaint against the defendant. There's no question here that Mr. McKinley was accused of a provisional and terrible crime. But the central question here, and it's a very portable question, I think, is this. How should the criminal justice system treat somebody like Mr. McKinley? It's my argument here today that the criminal justice system should treat Mr. McKinley just like it treats every other client that appears before him, and that's with fundamental fairness under the law. And, of course, the lead runners have been the advocate for a couple of reasons. Now, my first argument is that if the State didn't give the defense reasonable notice of its intent in sentencing the incident, Mr. McKinley's allegedly brutal or heinous behavior would have filed such notice the morning of trial, and either gave the defense notice of this before a Monday trial or on the morning of the Monday trial. But earlier notice would have changed the defense strategy just how? The defense argued when it first objected to this and also in its motion for a new trial, it would have affected its investigation of the case. It would have affected the way that it argued its motion to eliminate regarding the slow motion bailout. And I think those are the two most important things, is to have the defense have reasonable notice of this. It may have done something, but specifically, I can't say because I wasn't there. Well, let me just ask you, does that make any sense to you? What was the maximum unenhanced sentence? As far as I can tell, Your Honor, 60 years. 60 years? It would have been standard. So 60 years wasn't enough to want to do a reasonable investigation? You would have done more investigation if it was more than 60 years? Well, I suppose I can turn that question around and ask, was 60 years not enough for the state? The state provided for 60 years during the sentencing hearing, and it simply proceeded under the standard verbiage of the state. It's not clear to me, Your Honor, why the state needed to blindside the defense of this at the last minute. Now, you've got to have some prejudice, right? So I'm just wondering what the prejudice is by what you described as a late notice. How is the defendant prejudiced by the timeliness of the notice? In my mind, the most important thing is the slow motion bailout. Now, I wasn't in the jury, so I can't say exactly why the jury found that this offense was disproved. I suspect, and we suspect, that it had to do in large part with that slow motion bailout. That slow motion bailout was unpleasant to watch. This motion got litigated before the state gave the defense notice that it was going to see the broader innocence. So you tell your client, well, it's only 60 years, so I'm just going to really concern myself with that video. I don't think that's what the defense counsel says in his mind at all. It's an entirely different allegation. Not only is it a different sentence, which was the life sentence that was ultimately handed down, but it's a different allegation that the defense has to prepare for. It's not just the fact that Mr. McKibben was subject to the sentence. Yes, that's part of it. The more important part of it is this is a separate allegation that the state took on burden for, and when the state took on that burden, the state was able to prepare itself for that burden. The state gave the defense no notice, no reasonable notice, so that the defense could prepare to meet this allegation, to counter this burden. Well, the ruling on a motion limiting about the video, right? That's an interlocutory order. After the notice was given, the defense could have moved to say, hey, the judge will want to revisit the issue about the video. Could counsel have done that? I suppose counsel could have done that. I wasn't in counsel's shoes at the time. I suppose that's possible. Perhaps counsel thought that that would have been futile. Perhaps counsel thought that this motion had already been thoroughly litigated and the court would not have changed its mind. You know, the requirement is that you notify the defendant before trial. Yes. And the defendant was notified before trial in this case. Right. And that's one of the state's primary arguments, is that the state has a technical compliance system. I mean, there could have been a request for a continuance, saying, oh, wait, this is a serious offense, but now I'm going to have to put some more evidence on it, or I'm going to have to do something different. Well, let's stay true to that. Because there was no doubt the defendant was aware of the alleged circumstances prior to trial. Yes. Before there were findings made. Yes. Yes. As far as the… What facts would have been different? What facts would have been different? The facts were what they were. I don't think any facts would have changed this. It's not possible for facts to change. Facts are facts. As far as the continuance issue, it was something that I thought to, and what I can say is, and this just takes me back to the motion amendment. The motion amendment had already been litigated. And anything that would have been presented at that point would have been in the nature of a motion to reconsider. And motions to reconsider, as we all know, are not looked upon favorably and are typically not granted. It's much more efficient for a defense attorney to be able to argue these things in the first instance. To be able to have all of these allegations on the table in the first instance. Was the motion to eliminate a continuance motion? The motion to eliminate was not a continuance motion. You're saying that it would be futile to file a motion to reconsider on the motion to eliminate that had been ruled on. Am I correct? I didn't catch your question. You are saying that it would be futile to file a motion to reconsider the ruling on the motion to eliminate. Is that right? I don't know. It certainly would have been. I'm just saying that it constantly would have perceived it to be futile. Perceived it as such? Yes. Okay. Or what would the trial court have ultimately ruled on something like that? Well, we don't know. But it would be an appropriate attempt to do this, to have a reconsideration of the motion to eliminate. Yes. It would have. So it's not just a reconsideration, look at it again, but the argument would be, look, circumstances have changed. Now, since the ruling on the motion to eliminate, which is they have notified us that they're going to seek brutal and heinous enhancement, right? Yes. Okay. Yes. And so now, but you're saying that brutal and heinous enhancement is not just a sentencing enhancement, but it's an element that has to be established? It's a separate allegation. A separate allegation. Yes. It's a separate allegation that has to be submitted in a very improved manner. Would that make it more likely or reasonable to do a motion for reconsideration? Again... Then a run of the mill, just take another look, I think you're wrong. Counsel could have done that. Why counsel did that, I can't say. And then the question is, you keep talking about reasonable notice. Is there any requirement in the language that it be reasonable notice, or is it just saying notice before pretrial? The statute simply says notice before trial. Okay. There's case law, which I cited in my brief, and now the case law says that notice has to be reasonable. And let me just say... And what are the parameters of reasonableness in light of that, in that case law, decisional law? I would think that this court would reason that a reasonable requirement should be part of the solicitation. If this court were to withhold that, all the state has to do is pretend the defense was written notice before trial, this opens the door to a true bond adjustment. Because here it's... We don't know exactly, as I pointed out in my reply, it's not exactly clear when the state had written notice before trial. It may have been a Friday before trial, it may have been a Monday before trial. But if this court comes down and says, okay, we're going to go with the strict financial court language to say that it only has to happen before trial, and that opens the door for the state 30 seconds before jury selection starts to say, here, guess what? We're going to try to... Well, this was the Friday before the trial. The trial started on Monday. There was some sort of informal notice given to the defense counsel the Friday before trial. An informal notice, phone call or conversation in the halls of the courthouse, we don't know. We do know, was there a written notice? Was there a written notice? Yes, there was. There was written notice given the morning of trial. Depending on how you read the record, it's conceivable that written notice was also given to the defense counsel Friday. Well, okay, the worst case scenario, sitting at the counsel table before trial begins, there's a document given to defense counsel. Yes. Okay. Okay, but just how exactly would his... Let's say he had gotten notice before the hearing on the motion in Lemony. Just how exactly would that have changed his argument to try to keep that video up? I don't know exactly because I wasn't... Well, I get that, but you're the appellate counsel, and one of the things you've got to establish here is, you know, if you say to the judge there's some kind of prejudice, well, because we got late notice, we couldn't do X. What is X that you couldn't do because of the late notice? Fair enough. Because counsel wasn't aware that the state was going to try to relax brutal and heinous and try to seek the status of the heinous, counsel was not able to fully, in my view, explain the import of the slow motion nature of this video, and counsel would have been aware of this. So, this is probably the most serious piece of evidence that goes to brutal and heinous, is the slow motion video. And all counsel is thinking at the time of the motion in Lemony is that the slow motion video only goes to guilty witnesses. It doesn't necessarily go to whomever he is. Once, theoretically, had counsel known of the brutal or heinous allegation before this motion in Lemony was litigated, counsel would have been aware, counsel would have been on guard that, look, this is what the state is trying to do. The state is trying to prove my client did something that was brutal and heinous and is going to seek a sentence against him that could perhaps result in a life sentence, and that's what happened. So, the import of the slow motion becomes a lot more serious, and counsel could have made those arguments to the court. Look, this is something that not only is going to go to my client's guilty witnesses, but it's going to go to the question of whether or not my client has to spend the rest of his life in prison. Those arguments were not presented to the trial court because counsel could do it. Well, the fact of the video, I mean. How old was your client at the time he was convicted? I believe he was 31. Well, I got news that 60 years he was going to spend the rest of his life in prison. Yes. So, wife 60 years, same thing. And, by the way, I noticed on the field you don't argue that the trial court erred in allowing the video. No, we didn't do that. Let me address your first point. Yes, if he would have gotten 60 years, that puts him around 90 years when he gets out, of course. That's what the math says. In my very own opinion, there's a significant difference between for somebody like Mr. McKinley, who's sitting in a jail cell, and he thinks to himself, I've got a life sentence, there is no hope whatsoever, I'm staring at these four walls and these bars for the rest of my life. Or, he has hope, a shatter hope, a glimmer of hope, that he might breathe free air at some point in the rest of his life. To somebody like Mr. McKinley, that is a significant difference in the way that man is going to wake up and go to sleep for the rest of his life. So, you're arguing that his hope was taken away. Yes, I certainly think that's part of it. In response to Justice Flint's question, that certainly is part of it. And on the 60 year sentence, with good behavior, et cetera, and credits, what is it, 85%? This is first degree murder, Your Honor, it's 100%. So, it would be 100%, yeah. So, we're talking full 60. Yeah. If he wouldn't sentence. So, he'd have a glimmer of hope that he could get out of prison at age 99. I believe when he was closer to 90, yes. How old was he, you say, when he was convicted? I believe he was in the neighborhood 30 years ago. 30, okay. I believe he was 30 or 30. Okay. 90. Very quickly. With regard to the first issue again. Yes. And it has to be reasonable notice. And that's what I want to underline here, Your Honor, is that what happened here is the state, for reasons that we don't know, blindsided him. Blindsided him with facts? No, with an allegation, with an allegation. Well, it is, I say, blindsided him with facts. Reasonable notice is that there's something that, there's nothing else that was considered differently than what everybody knew before the trial started. If notice has to be reasonable, it cannot be the morning trial. That cannot be reasonable notice. So, the statute's wrong. It says before trial. I'm not saying that the statute's wrong. No, what I'm saying is, and this happens all the time, is that courts of appeal interpret statutes and create common law. And there's this common law requirement that notice be reasonable. What would be the reasonable factors that, besides speculation and conjecture, what do we have in this record to make it reasonable? What facts would have been discovered, what changes would have been made based on this record? We can't change the facts on what they are. There could have been different arguments. There could have, again, I'm just going around the circle now, and I apologize for that. Could there have been different arguments made at the earlier motion limiting? Pardon me? What different arguments are you talking about? Not during the trial. The trial was what you were aware of, though. Of what they were seeing as important at the trial. One of the things that defense counsels argue is that their trial preparation and the way they interviewed the witnesses may have been different at date. In what way besides speculation? In what way would they have been different? Again, I don't know because I wasn't a defense counsel, but it's a fundamental problem here when we have the state providing notice of this at the last minute. And this seems to me to be fundamentally unfair. And I have to see it. And I'm more than happy to answer any questions. So basically, your argument, there's still time, isn't there? Time is up. Oh, I'm sorry. I didn't hear that. Okay. I'll ask you in rebuttal. Ms. Craft? May it please the court. Counsel, my name is Taylor Craft, and I represent the people of the state of Illinois in this matter. The opening brief in this case was written by J. Edmund Norton, who has recently left the appellate office. I recently left the appellate office, and this is my first presentation on this court. Welcome aboard. Thank you very much. I want to start off by saying that the defendant in this case was treated with fundamental fairness. The defense counsel argued two points in his brief. That the state's notice of its intent to seek a brutal enhanced sentencing enhancement was unnecessary, and he also alleged judicial misconduct and that the trial judge should lodge a misdemeanor. Due to these allegations, the defense counsel is asking that the defendant's conviction be reversed and a case be amended for a new trial, or, in the alternative, vacate the defendant's life sentence and rebound the case for resentencing without the brutal enhancements. This court should deny defense counsel's request because, one, notice of the state's intent to seek a sentencing enhancement was proper for statute, and, two, defendant did not raise the issue of judicial misconduct in the trial court. Therefore, he forfeited the issue. Further, there is no error, just sympathy shown by the trial judge. However, if this court does find error, the facts of this case are so egregious that any alleged error was not prejudicial. On the first issue, notice. This court should consider the following three points. One, the plain language of the applicable statute. Two, defendant failed to show obvious prejudice by the state's notice to seek a sentencing enhancement. And three, this case involved a gruesome murder. Defendant should have been aware that the state would request a sentencing enhancement. First, the statute. The state is in compliance with the statute. 725 Illinois Compiled Statutes 5-111-3C-5 reads in part, If an alleged fact is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum, the alleged fact must be provided to the defendant through a written notification before trial and proved beyond a reasonable doubt. The record of this case shows that the defense counsel received a copy of the notice to seek the sentencing enhancement three days prior to trial and the state filed formal notice with the court the morning prior to trial beginning. What's the difference between notice and formal notice? What's the difference? Uh-huh. On Friday... Because that's not in the statute. It's not in the statute. It just says written notification. Right. Yes. So formal notice is written notification. Correct. Formal notice with the court on Monday before trial began, but the record shows the defense counsel received a copy of the notice Friday before trial. I'm saying formal, saying Monday before trial, filed with the court. Does your requirement need to be filed? Just written notification. And to whom is the written notification? The statute reads the alleged fact must be provided to the defendant through a written notification before trial. So we don't bother about filing with the court under that statute, do we? Correct. Okay. But you are saying, because I think it was uncertain by opposing counsel how that, I guess you might call it informal notice, was given on a Friday. Correct. I mean, the statute only says written notice with no time frame whatsoever, and it directs to whom the written notice is to be provided. That's right. Okay. So will you say they got a copy of the written notice on Friday? That's what the record says, Your Honor. Okay. And you're saying that's reasonable? Yes, Your Honor. The defense counsel did talk about some cases. Yeah, well, I mean, has the common law engrafted a reasonableness to that notice beyond the statutory requirement? I can tell you this, Your Honor. Defendants cite the case of the Peoples v. Schrader for the notion that criminal defendants must receive reasonable notice of the state's intention to seek an enhanced sentence due to aggravating circumstances. The Schrader case was specifically about the charging instrument and did not have anything to do with the statutory requirement of notice. That case involved a defendant who insisted that the extended term portion of his sentence must be vindicated since the enhanced offense of brutal or heinous behavior was not charged in the indictment. So the argument was there was no notice in that event? Correct. Right. Now, we also cite the case of State v. Scott, which is a case out of Kansas. Now, that case cites a Kansas statute that requires that in order for the state to seek the death penalty, it must give notice to the defendant no later than five days following the engravement of its intention to do so. Now, the parallel rule in Illinois to that would be former Supreme Court Rule 416 regarding the death penalty. And that contains very specific language as to when notice must be given. And it says, as soon as practicable, and know that more than 120 days following engravement unless good cause is shown. But those were death penalty cases. Correct. And those rules have now been rescinded by the Supreme Court. Correct. And those time limits were created through common law decision or statutory requirement? That was the statutory requirement. Both of those? Yes. Okay. And we don't have that here. Correct. Okay. Yes. So there is no common law requirement of reasonableness? Correct. Written notification in the statute. At this point? Correct. The fact on this point is that written notification took place before trial. And as one of your honors mentioned, defense counsel could have asked for a continuous but never did. With regard to some statement in that one case about reasonableness. Yes. What factors changed in the trial? Was there something added to the trial? I mean factually. Were there any facts changed? In the case before us, no. No facts. We did not, the state did not add any facts. Was there anything that the defendant was made aware of that changed from the earlier information and the later information? No, your honor. This trial began more than two years after the state filed the complaint against the defendant. He was aware of the first degree murder charge. There was sufficient notice to prepare the defense for what was a gruesome murder. The defendant brutally and repeatedly stabbed the death of the victim in an apartment laundry room following the alleged abuse. The multiple stab wounds to the victim's neck and back killed her and are evident of the brutality inflicted by the defendant. All of this was captured on video. The defendant knew this. Well, opposing counsel is making the argument, yes, that's all true. But when a motion to eliminate was presented and argued, it was to go to restricting some of this material only to the guilt or innocence of whether this defendant did it or did not do it. Right? There may be some other element that is required to be established beyond reasonable doubt under a first degree murder charge. And his argument is that the argument presented motion to eliminate might have been different if that had been known that the sentence enhancing element, which has to be established beyond a reasonable doubt, was also in play. How do you respond to that? The state fails to see how defense counsel would have argued his motion to eliminate any different. The facts of the case, as I mentioned, are so gruesome. We feel that defense counsel should have speculated that there would have been some sort of different argument. Now, in part, it argues in its brief that defense counsel, in a way, won his motion to eliminate and that it won if the original version was shown. So what happened is that there was a slow motion version shown that was a bit altered, but then the original version of that video was also shown to the jury. Okay, so both versions were shown? Correct. And what was the purpose of the slow motion? To refute defense counsel's argument that this was self-defense. Okay, so it had a reason beyond attempting to prove brutal and heinous. Correct. That's very important, isn't it? Yes. Okay. I mean, the video was relevant because of the defense. Correct. One other thing under notice. Due to the gruesome nature of this offense, defendants should have been aware of the possibility that the state would request an appending sentence. Defendants used for defense counsel argued that he was going to be cited by this absentee. I mentioned some of the brief facts of the case. Well, this idea of should have known, that's problematic, isn't it? I'm not sure about that, should have known. It goes to the competence of counsel, perhaps, more than anything. But whether it's fairness is the other question. The state would argue that it was fair because the first statute written into this was fair. And when you take a look at the plain language of the statute, the state was in compliance with the statute. You know, fairness also denotes, it deals with the circumstances of this offense. Why the state's position was this heinous and brutal. What were the factors that made it so allegedly? What was found to be heinous and brutal. So what are the factors with regard to this offense? The surveillance video showed defendants repeatedly stabbing the victim to death in a laundry room. It also showed the defendant beginning to engage in sexual conduct with the victim. It shows the struggle. It shows the defendant making jerking, stabbing motions, reaching for the door to leave, and then returning again to make more jerking and stabbing motions. Ms. Woods, the victim was found face down, shirtless in a pool of her own blood, on the laundry room floor. And those were the factors that, from our standpoint, made the state seem to be brutal and heinous. And that's what the fact finder, the jury found, was looking at. Yes, and the jury found that that could not be understood at all. With regard to the garbage statement, that's in reference to one paragraph in the reported statements of the trial judge where he said, I can read, and I see here in the statements presented to me, particularly for yours, Ms. Hatcher, you know there's garbage in this world. Now, Ms. Hatcher is the victim's mother. Correct. That's a fact. Some people like to live in a garbage dump and they don't do well in there if there is not garbage. Apparently, there is not enough stench for that, so they have to assist in making other people feel pain. That's the statement that is the complaint about. Is that right? I mean the argument regarding that statement. Yes. The defense counsel argues that the trial court called the defendant garbage-shooting in a garbage dump. Your Honor, if you read in context, this comment is not referring directly to the defendant, but rather the trial judge is trying to explain the situation to the victim's mother, that you can't do anything about what other people are saying. As Your Honor was reading, the trial judge starts off by saying, Ms. Hatcher, to the best that you can look around this side of the courtroom, you have continued love and life experiences that can be shared with other people in your life, and you can bring jostling to them every day to this event. Who knows her better than you? Not possible. If you thought about the pain that you would suffer from losing your granddaughter or your daughter or your sister or your cousin, your niece, you know, and as part of this community, that the park that's at 14 West Jefferson Street and the park that you know shops at Jewel Osco or whatever, if there is anything that we have done post-death of Jocelyn that made your pain one bit more, please accept my apologies and my continued condolences. I've been reading the speech here and the statements presented to me, particularly yours, Ms. Hatcher, that you know there's garbage in this world. That's a fact. Some people like to live in a garbage dump, and they don't do well if there is not garbage. Apparently, there is not enough stench for them, so they have to assist in making other people feel pain. So if you have ever read anything or were shown anything that read something about your daughter that was not the young lady that I know so much about now, you don't have to defend it because you can't defend garbage. At the best of our ability, what we do is we feel sorry for them. The bottom line there is that the judge was just explaining to the mother who was suffering over the death of her daughter, that if she hears people saying things in the community or what she had heard defense counsel during the trial say about her daughter, that that stuff doesn't matter, that you know who your daughter is. So what was the purpose of that monologue by the trial judge as you see it? From how the state sees it, and I'm reading the complete record, the mother, it can be inferred that the mother was upset that during the trial there were some things said about her daughter. And she, it can be inferred, was appearing that she was having a hard time dealing with these things that were being said about her daughter. And to which the trial judge offered words of condolences, empathy, to the mother of the victim, saying to her that there are people that like to inflict pain in this world on others. The state does not view this as a direct, as something that is directly being said. The mother is referring to, speaking of her daughter's indiscretion. That the murder happened, paraphrasing, during her daughter's indiscretion. And so the reference in the paragraph by the judge is in reference to the mother's statement. Is that right? Correct. Mr. Boyd, some rebuttal. Yes, just a couple of things. First thing to point out, and I'll just say this simply and directly. If there is no reasonable requirement attached to this rule, that it is an enhancement statute, if that's not there, then this statute is simply an empty formality. And all the state has to do in every single one of these situations is walk up to defense counsel, as the jury is walking, the prospective jurors walking in the courtroom, and hand counsel that sheet of paper. There has to be a reasonable requirement crafted on this statute, or the statute is just an empty formality. Well, I don't necessarily disagree with you. The point of this is we have errors and we have prejudicial errors. As we know, nobody's entitled, you're entitled to a fair trial and not a perfect trial. And so normally when an error happens, it says this was unreasonable because it prejudiced me and somehow limited my ability to prepare the defense I would have otherwise prepared had I known. And for that reason, the late notice was unreasonable. And you've been asked 15 times what the prejudice was and so far no answer. I have an answer for you, Your Honor. Yes, I know I'm asking a question, but I've got one. Well, I think the defense counsel could have done it. Had counsel had noticed this before the argument was in motion, his personal research would have proven what this was. And second of all, Your Honor, you're not including yourself. What did that slow motion video show us? It wasn't already there. Why was it necessary to show us the slow motion? How did that help? First of all, this didn't happen in slow motion. It happened in real time. The video shows what it, the normal video shows what it's like. And it's fairly unpleasant in and of itself. So what counsel could have argued is this. Look, if you've gotten me about this ruin of leniency, if you show this thing to the jury, that is just going to prejudice my client because it's going to lead the jury to find that my client was at the damn ruin of leniency. But opposing counsel answered that question by saying that the purpose of the slow moving video was not like cumulative prejudice to your client, but because the defense presented a self-defense defense. Sure. That would have been a counter argument to counsel's argument that this is going to prejudice my client. Who would have prevailed on that? I don't know. Certainly, there's always a counter argument. It would have been a fair one, certainly. But the argument that defense counsel could have made is that this would have been unfairly prejudicial to Mr. McKinley. Simply not necessary. Everybody's capable of watching this video. We can watch this video as many times as we want. And again, this didn't happen in slow motion. Events don't happen in slow motion. They happen in real time. So your argument would be that even though defendant is saying this is a self-defense type of homicide, correct? Correct. That the real time speed of the video would allow a jury to conclude that it was self-defense. Or not. Or not. Either one. Right. Well, obviously defendant wants that conclusion. Yes, of course. Yeah. Well, from the jury's point of view, the jury can decide either way based on the video. And again, I know I'm misrepeating myself, but this didn't happen in real time. It didn't happen in slow motion. So that's what the jury should have seen. Your suggested argument was made. They made a motion to eliminate to prevent the slow motion aspect shown to the jury. Because it was prejudicial to your claim. But not in the context of the evidence. It was in the context of guilt or innocence in terms of whether it was first degree murder or self-defense, right? Yes. Okay. The last thing before I run out of time, I want to very briefly state this. The comment that the trial court made about Mr. McKinney being garbage, frankly, and I think everybody was aware of this, was specific about it. And this court, regardless of how this court comes down, ultimately, I would respect the request that this court make it clear that it's ruling that it is impromptu for a circuit court judge in the state of Illinois to refer to a party before it, any party, regardless of whether it's someone like Mr. McKinney or whether it's anyone else, to refer to a party before it as garbage. Now opposing counsel gave the monologue, I think, word by word, right? That the trial judge used? Yes. Was there a statement that the defendant was garbage? Or was it inferential? I cannot conceive of who else the trial court would refer to. Would it be referring to? If it's incomprehensible, it would be the trial court would refer to it. Can I ask a question? It would absolutely be error for a trial judge prior to a finding of guilty to refer to any litigant as garbage. The mention of garbage, the word garbage, happened at the sentencing hearing after someone was found guilty of committing this offense. And under the circumstances of this offense. And so it wasn't prior to the finding of guilt. It was after the person was found guilty. And again, I'll read the judge said, I can read and I see here in the statements presented to me, that's all the evidence, including the mother's statement about despite the daughter's indiscretion. And he says, particularly for yours, Ms. Hatcher, that's the mother, you know there's garbage in the world. And that's the references the mother was making. That's a fact. Some people like to live in a garbage dump and they don't do well if there's not garbage. Apparently there's not enough stench for them. So they have to assist in making other people feel pain. That's the whole statement, isn't it? Yes. The whole statement made. After the finding of guilt. And right before. And during the sentencing. And right before the judge sentenced my client to spend the rest of his life in prison. Yes, that's exactly what it is. And so the bias is in the sentencing phase. We know that. Absolutely. It's nothing whatsoever to do with guilt or innocence. This was discretionary. This was not made before. Well, there's no guilt or innocence. Already guilt or innocence has been established by a jury. Yes, absolutely. Okay. So we're not in that phase of a criminal proceeding. We're in the phase of sentencing. And so where does the parent descriptor of the defendant as inferentially garbage, where is the error as to the sentencing? Because this was a discretionary life sentence. The trial court did not have the sentences that would give you the right to prison. Imagine how this must have looked to Mr. McGinnis. We wouldn't be here if the trial judge had said, I find that brutal and heinous has been established. Right? Right. And then gone through the sentencing factors that are outlined. Yes. And what are the sentencing factors in making that discretionary decision as to a sentence of either life imprisonment or what were the other choices? After brutal and heinous has been proven beyond a reasonable doubt by a fact finder. Right. So where's the discretion? What discretion did the judge have? The statute says that the life sentence may be imposed, not shall be imposed, may be imposed. But the trial court did not have the sentences that would give you the right. Okay. But cannot sentence to life unless there is a beyond a reasonable doubt finding of brutal and heinous. That opens the door. Opens the door to go through. Yes. And so the trial judge evidenced prejudice, you say, against the defendant by that descriptor of the defendant? I can't make it any more clear than that. It is simply not okay for trial courts in the state of Illinois to put a charge before a judge. And in turn, not to sentence this person to life in prison.  Yes, it's wrong. In the world of political correctness, so remember we had the death penalty. What if the trial judge had said, Mr. Defendant, I find you are the finest of all fellows. I wish I could have you at home. But I sentence you to hang to the neck until you are dead, dead, dead. What's the difference? Then we don't have that issue. The issue is the appearance of impropriety. And that's why I said that stuff in the court of judicial conduct in my brief. This looks bad to everybody in that courtroom. That looks bad. Mr. McKinley's family was there. His family was there and he had to listen to the trial court call. He did a piece of garbage and then sentenced him to life in prison. That makes the entire system look awful. Once the trial judge, the victim's family had also heard their daughter, who was brutally murdered, tarred during the trial. Somehow this was her fault. She got herself stabbed. And one could read that as saying to the judge explaining to the mother, look, man, there's some evil folks out there. And nothing we can do about it. You just got to ignore these. There's evil out there. It's out there, so please ignore it and look at the good stuff. That's not what the judge said. There's no contest about that there should not have been a finding of heinous and brutal. I mean, that there weren't the elements of it. There's no argument that the elements of factual elements that need to be present for heinous and brutal were not present in this case. No. That's not made in this case. No. So the judge was confronted with a sentencing hearing after fact finders had found that this murder was committed in a heinous and brutal way. Yes. To this victim. Yes. Which would have allowed him or her, and I think it's her in this case, am I correct? Yes. The sentencing judge. Would have allowed her to impose the life sentence, right? Yes. Okay. And so you're saying that we should call into question the appropriateness of a life sentence by the prejudice that one might infer from the description of the defendant given by the trial judge. Yeah, and all those other things that I mentioned in my brief when I went over this issue, yes. There were, there were, I don't know. Well, that's okay. We can expand time. There were, there were, there were three instances of this, and none of them look very good from the neutral point of view. And then the judge turns around and says, this is my client here to spend the rest of his life in prison. This is simply not the way the system is supposed to work. The court is not supposed to bend over backwards. It's simply for the victim's family. You're talking about one paragraph where the word garbage is mentioned three times. Are you not? In the transcript, you're talking about one paragraph where the word garbage is there three times, right? I didn't see it twice or three times. I don't have the transcript right in front of me. It's in 1339, I believe. Yes. It's that one paragraph you're referring to. Yes. I mean, when you said, I think before you said three times, I just want to make sure you're talking about one paragraph. Yes, it's on 1339. So, Your Honor, in conclusion, for the reasons we've stated here, if the police may ask the court to overturn this review, this could basically be a trial. If the court plans to do that, re-enact the recess. Thank you very much for your time. Okay. Mr. Boyd, thank you. Ms. Pratt, thank you both for your arguments here this morning. We'll take this matter under advisement. A written disposition will be issued. We'll be entering a recess for a panel change before the next case.